No. 2,226.

THE PEOPLE OF THE STATE OF CALIFORNIA, RESPONDENTS, *v.*
CHARLES G. AMES, APPELLANT.

| 39 | 403 |
| 99 | 576 |
| 39 | 403 |
| 139 | 727 |

CRIMINAL LAW.—CORROBORATIVE EVIDENCE.—To obtain a conviction on the testimony of an accomplice, there must be corroborative evidence tending to criminate the accused, aside from and without the aid of the testimony of the accomplice.

APPEAL from the County Court of Los Angeles County.

The case is stated in the opinion.

*Kewen & Howard,* for Appellant.

There was no testimony corroborative of that of the accomplice, Marion, tending to connect the defendant with the commission of the crime.

The necessity of such corroboration is established by Hittell's Digest (Art. 1962); 34 Eng. Com. Law Rep. (pp. 314 and 381); *People* v. *Eckert* (16 Cal. 110.)

*Jo Hamilton,* Attorney General, for Respondents.

Any evidence tending to corroborate that of the accomplice, is sufficient to let the case go to the jury for their consideration. (*Queen* v. *Wilkes and Edwards,* 32 Eng. Com. Law Rep. 507; *Queen* v. *Fowler,* 24 *Id.* 314–15; *Queen* v. *Dyke,* 34 *Id.* 381; Wharton's Am. Criminal Law, 366; 1 Phillips on Evidence, 37, 38 and 39.)

CROCKETT, J., delivered the opinion of the Court:

The defendant was indicted for and convicted of the crime of robbery, perpetrated upon the passengers in a stage coach, near the City of Los Angeles. Several persons were concerned in the robbery, all of whom were disguised with masks. Some of the passengers who were robbed were called as witnesses for the prosecution, and, after detailing the particulars of the robbery, testified that one of the persons who took part in it was designated by one of his confederates, on one occasion, whilst the robbery was in progress, by the name of "Charley," apparently through inad-

vertence, which was immediately corrected by the substitution of "Number Three," for the name of "Charley." The driver of the coach also testified that the robbers designated each other by numbers, except on one occasion, when the name of "Charley" was employed. The robbery occurred in the night, and neither the passengers or driver could identify any of the robbers. The prosecution then called as a witness one Marion, who was indicted as an accomplice in the robbery, and who testified fully to the guilt of the defendant, detailing all the particulars of the transaction. He further testified, that amongst themselves the defendant was usually known and addressed as "Charley," but that, in order the better to elude detection, the parties engaged in the robbery were masked, and were designated by numbers, and that the defendant was known as "Number Three."

It was objected, on the trial, that the defendant could not be convicted on the testimony of the accomplice alone, and that there was no corroborating proof tending to connect him with the crime.

Section 375 of the Criminal Practice Act is as follows: "A conviction cannot be had on the testimony of an accomplice, unless he be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely show the commission of the offense or the circumstances thereof."

As we construe this provision, the corroborating evidence must, of itself, and without the aid of the testimony of the accomplice, tend, in some degree, to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt; for, in that event, the testimony of the accomplice would not be needed. But it must tend, in some slight degree at least, to implicate the defendant. The purpose of the statutes was to prohibit a conviction, unless there was *some* evidence, entirely exclusive of that of the accomplice, which, of itself, and without the aid of the accomplice, tended to raise at least a suspicion of the guilt of the accused. But, aside from the testimony of the accomplice, and laying that entirely out of view, there

was no evidence whatever in this case "tending to connect the defendant with the commission of the offense." The fact that one of the robbers was addressed as "Charley," and again as "Number Three," and that they designated each other by numbers, no more tends, of itself, to connect the defendant with the crime than it would to raise a suspicion against any one else. He is indicted, and pleads as "Charles G. Ames;" but if the fact that one of the robbers was addressed as "Charley" tends to raise a suspicion against the defendant, why not against every other man in Los Angeles County who has the misfortune to have the name of "Charles?" If one of the robbers had been addressed as "Smith" the same argument would prove that the whole of that numerous family would thereby have been, in some degree, implicated in the crime.

Nor was there anything in the testimony of the witness, Hester, which, of itself, and without the aid of the testimony of the accomplice, tended, in even the remotest degree, to connect the defendant with the offense. There was, in fact, a total absence of such corroborating evidence as the statute requires, to authorize a conviction on the testimony of an accomplice. (See, on this point, *People* v. *Eckert,* 16 Cal. 110; and for a full collation of the authorities in England and America, see 1 Wharton's American Criminal Law, Secs. 785 to 789, inclusive.)

Judgment reversed and new trial ordered.