NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LANCE DALE MCPHERSON, *Appellant.*

No. 1 CA-CR 14-0551
FILED 7-23-2015

Appeal from the Superior Court in Maricopa County
No.  CR2012-106912-001
The Honorable Peter C. Reinstein, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Ballecer & Segal, Phoenix
By Natalee Segal
*Counsel for Appellant*

Lance Dale McPherson
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

**¶1**		This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969).  Counsel for Defendant Lance Dale McPherson has advised us that after searching the entire record she has been unable to discover any arguable questions of law, and has filed a brief requesting us to conduct an *Anders* review of the record.  McPherson filed a supplemental brief.

### FACTS[1]

**¶2**		McPherson moved into an apartment next door to L.R. and her children in 2009.  He subsequently started dating L.R., and eventually moved in with her and her children.  L.R. would leave her five children with McPherson if she had to leave the house.  And when her sister, J.V., needed, McPherson would also watch her three children.

**¶3**		McPherson, however, began to molest and engage in sexual conduct with one of L.R.'s children, S.V., who was then eight years old.  His conduct continued for three years.  He also molested and had sexual contact with M.M., J.V.'s child, who was also eight at the time.

**¶4**		On February 1, 2012, M.M. told her sister that she and S.V. had been molested by McPherson, and the sister told her mother.  J.V. called L.R., who was having a family dinner at a restaurant with McPherson, and told her about the accusations.  L.R. immediately took her children outside, and S.V. confirmed the accusation.  L.R. then took her children, left the restaurant, and called the police.

---

[1] We view the facts "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant."  *State v. Rienhardt*, 190 Ariz. 579, 588-89, 951 P.2d 454, 463-64 (1997).

**¶5**          McPherson was arrested and subsequently indicted on six counts of sexual conduct with a minor, class 2 felonies, two counts of attempt to commit molestation of a child, class 3 felonies, and one count of molestation of a child, a class 2 felony.  The case went to trial, and the court granted his motion for directed verdict on count six, one of the counts of sexual conduct with a minor.  After considering all the evidence, the jury found McPherson not guilty of Count 8, an attempted molestation against M.M, but guilty of attempted molestation against S.V. (count 1), five counts of sexual conduct with a minor (counts 2, 3, 4 and 5 involving S.V., and 9 involving M.M), and one count of molestation of a child (count 7, involving M.M.).  McPherson was subsequently sentenced to prison as follows:  life in prison with the possibility of parole after 35 years for one count of sexual conduct with a minor; 20 years for each of the four sexual conduct with a minor counts; and 17 years for molestation of a minor; all consecutive to each other.  He was also ordered thereafter to serve lifetime probation for attempted molestation of a minor.

**¶6**          We have jurisdiction over this appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).[2]

## DISCUSSION

**¶7**          McPherson raises two general issues on appeal.  He first argues that the trial court improperly dismissed certain jurors while keeping other biased jurors.  He also argues the court erred in denying his motion for judgment of acquittal because the evidence was not sufficient to support the verdict.[3]

---

[2] We cite the current version of the applicable statutes absent changes material to this decision.

[3] McPherson also alleges "jury misconduct" and that "the state asked leading questions while questioning the allege[d] victims," without further explanation.  Because McPherson does not develop those arguments, refer to the record, or cite any legal authority to support those arguments, he has waived those issues.  *See State v. Moreno–Medrano*, 218 Ariz. 349, 354, ¶¶ 16–17, 185 P.3d 135, 140 (App. 2008); *see also* Ariz. R. Crim. P. 31.13(c)(1)(vi) (argument shall contain "citations to the authorities, statutes and parts of the record relied on"); *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (issue waived when argument insufficient to permit appellate review).

## I. Dismissal and Retention of Trial Jurors

**¶8**        McPherson first asserts that the trial court improperly dismissed juror 8, but did not dismiss two other jurors. We review a court's decision to dismiss jurors during trial for abuse of discretion. *State v. Prince*, 226 Ariz. 516, 528, ¶ 26, 250 P.3d 1145, 1157 (2011). We are mindful that trial courts are required to excuse jurors "[w]hen there is reasonable ground to believe that a juror cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). And the court retains broad discretion to "determine when there is a reasonable ground to believe that a [juror] could not be fair and impartial." *State v. Eddington*, 226 Ariz. 72, 79, ¶ 17, 244 P.3d 76, 83 (App. 2010) (internal citation and quotation marks omitted).

**¶9**        Here, juror 8 had gone through the voir dire screening process and was selected to serve on the jury. He, however, waited until the second day of trial to tell the court that he and his son had convictions for driving under the influence, and that his son was charged with a sexual offense when he was twenty years old and, after an appeal, was ultimately convicted of a misdemeanor offense. The court questioned him out of the presence of the other jurors, and juror 8 indicated that he thought his son was treated unfairly by the justice system in the sexual offense case. The court then released juror 8 from further jury service. Based on our review of the record, and given the nature of the allegations against McPherson, the court did not abuse its discretion by dismissing him.

**¶10**        McPherson also asserts the court improperly refused to dismiss juror 11, even after learning she was a co-worker of M.M.'s aunt. During the third day of trial, M.M.'s aunt sat with the victims' family in the courtroom. Juror 11 noticed her co-worker and sent a note to the court. At the end of the day recess, and out of the presence of the others, juror 11 told the court that she was surprised to see a woman she worked with in the audience in the courtroom. She was questioned by the court, and juror 11 thought she could be independent and fair as long as she did not have any communication with her co-worker. After having juror 11 leave the courtroom, the court questioned M.M.'s aunt. And based on her answers, the court did not excuse juror 11.

**¶11**        Although the matter was resolved, later in the trial the State noted that the "aunt ha[d] voluntarily excluded herself from the courtroom since [the day she was questioned]." Consequently, based on the information the court had — the juror's surprise to see a co-worker, the court's questions and her answers, as well as the fact that M.M.'s aunt did not attend the proceedings after the third day of trial, the court did not

abuse its discretion by keeping juror 11 on the jury. *See State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37, 14 P.3d 997, 1009 (2000) ("In assessing a . . . juror's fairness and impartiality, the trial court has the best opportunity to observe [the] jurors and thereby judge the credibility of each.").

**¶12**        Similarly, McPherson argues that the trial court should have dismissed juror 10, who worked as an overnight stocker, because he was visibly tired during the trial. Juror 10 only revealed that he would be visibly tired during the second day of trial, but he was not dismissed at that time. Juror 10, however, was chosen as one of the alternates at the end of the trial, and did not participate in the verdict. Because the juror did not participate in the deliberations leading to the verdicts, the court did not abuse its discretion by not removing him after the second day of trial.

## II.    Sufficiency of the Evidence

**¶13**        Finally, McPherson asserts that the court erred in denying his motion for judgment of acquittal because there was insufficient evidence for the jury to convict him. Specifically, McPherson identifies information and testimony he considers to be inconsistent with what is in the police reports, the testimony of each victim, and the lack of physical evidence. We review the denial of a motion for judgment of acquittal de novo. *State v. Harm*, 236 Ariz. 402, 406, ¶ 11, 340 P.3d 1110, 1114 (App. 2015). But, we review the evidence "in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *Rienhardt*, 190 Ariz. at 588-89, 951 P.2d at 463-64. As a result, a judgment of acquittal can only be granted "if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is "proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Mathers*, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (internal citation and quotation marks omitted); *see State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995).

**¶14**        Here, the State was required to prove each element of each offense beyond a reasonable doubt. McPherson, by counsel, was able to cross-examine each witness, as well as give a closing argument summarizing all the perceived problems with the State's case. The jury, in listening to the testimony and reviewing the evidence, had to determine the credibility of the witnesses and weigh any conflicting testimony. In fact, the jury was duly instructed to take into account the witnesses' ability and opportunity to observe, their memory, their manner while testifying, any motive or prejudices they might have, and any inconsistent statement they might have made in light of all the evidence in the case. We do not weigh

or re-weigh the evidence. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989), *State v. Williams*, 209 Ariz. 228, 231, ¶ 6, 99 P.3d 43, 46 (App. 2004) ("Although the record contains some conflicting evidence, it was for the jury to weigh the evidence and determine the credibility of the witnesses.").

**¶15**        Although there were inconsistencies between the victims' testimony, both victims testified that on multiple occasions McPherson touched their respective private parts, which included digital penetration, and made them touch his private parts. The jury had to determine whether their testimony, individually or collectively, was compelling and believable. *See State v. Bronson*, 204 Ariz. 321, 328, ¶ 34, 63 P.3d 1058, 1065 (App. 2003) ("Because a jury is free to credit or discredit testimony, we cannot guess what they believed, nor can we determine what a reasonable jury should have believed."). In addition to the victims' testimony, the jury heard from the victims' mothers, S.V.'s sister, the investigating police officers, and Detective Sonia Stanley, who conducted a forensic interview of the victims. Moreover, the jury also heard from McPherson, who testified on his own behalf, as well as the testimony of Dr. Phillip Esplin, a psychologist. The jury was able to watch all the witnesses, weigh the testimony of all, and determine their credibility, while deciding what facts the State did or did not prove beyond a reasonable doubt.

**¶16**        Moreover, although there was no physical evidence to support the charges, physical evidence "is not required to sustain a conviction where the totality of the circumstances demonstrates guilt beyond a reasonable doubt." *State v. Canez*, 202 Ariz. 133, 149, ¶ 42, 42 P.3d 564, 580 (2002); *see State v. Jerousek*, 121 Ariz. 420, 427, 590 P.2d 1366, 1373 (1979) ("In child molestation cases, the defendant can be convicted on the uncorroborated testimony of the victim."); *see also State v. Williams*, 111 Ariz. 175, 178, 526 P.2d 714, 717 (1974) (conviction may rest on uncorroborated testimony of the victim of a sexual assault unless "the story is physically impossible or so incredible that no reasonable person could believe it"). As a result, and based on the record, there was substantial evidence for a reasonable jury to find that the State met its burden of proof beyond a reasonable doubt in order to convict McPherson. Consequently, the court did not err by denying McPherson's motion for judgment of acquittal.

## III.    Reversible Error Review

**¶17**        We have read and considered counsel's brief and McPherson's supplemental brief, and have searched the entire record for reversible error. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Having

addressed McPherson's arguments, and having searched the entire record for reversible error, we find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The record, as presented, reveals that McPherson was represented by counsel at all stages of the proceedings. There was an unsuccessful settlement conference, and McPherson allowed the State's last plea offer to expire. Moreover, the court granted McPherson's motion for directed verdict as to count 6 and the jury acquitted him on count 8; both were sexual conduct with a minor charges. And the sentences imposed were within the statutory limits.

¶18        After this decision is filed, counsel's obligation to represent McPherson in this appeal has ended. Counsel must only inform McPherson of the status of the appeal and his future options, unless counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984). McPherson may, if desired, file a motion for reconsideration or petition for review pursuant to the Arizona Rules of Criminal Procedure.

## CONCLUSION

¶19        Accordingly, we affirm McPherson's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama